# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| COURTNEY CHANEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.  CIV-12-1233-D |
| | ) | |
| CAROLYN W. COLVIN,[1] | ) | |
| Acting Commissioner, | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Pursuant to 42 U.S.C. § 405(g), Courtney Chaney (Plaintiff) seeks judicial review of the Defendant Acting Commissioner's (Commissioner) final decision denying her claim for supplemental security income (SSI) payments under the Social Security Act.[2] The matter is before the undersigned Magistrate Judge on referral by United States District Judge Timothy D. DeGiusti for proceedings consistent with 28 U.S.C. § 636(b)(1)(B), (b)(3) and Fed. R. Civ. P. 72(b).  Having carefully reviewed the administrative record (AR) in conjunction with the

---

[1]     Effective February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security.  Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is substituted for Michael J. Astrue as Defendant in this action.

[2]     The Social Security Administration denied Plaintiff's application for disability insurance benefits because she had not worked long enough to be insured for benefits, a decision she does not contest here. Administrative Record (AR) 17, 119-21,154-58.

arguments and authorities of both parties, the undersigned recommends the Commissioner's decision be affirmed.

## I.      Administrative proceedings.

In documents supporting her July 2008 application for SSI payments, Plaintiff stated that "[f]ibromyalgia, rynoids syndrome (circulatory disease), heart issue - two valves (aortic and mitral) regurge" became disabling as of January 1, 2006.[3] AR 123-30, 175.  Plaintiff reported these medical conditions limit her ability to work because (1) she has days when she is unable to get out of bed due to pain; (2) her nerve endings flare up causing her skin to hurt to the touch; (3) she is only able to sleep around three hours at a time; (4) the flare ups are brought on by temperature extremes, repetitive motion, and stress; and, (5) she suffers from depression and moodiness as a result.  *Id.* at 175.

The Social Security Administration (SSA) denied Plaintiff's claim.  *Id.* at 68-71, 75-77.  At her request, an Administrative Law Judge ("ALJ") conducted a July 2010 hearing where Plaintiff and a vocational expert appeared and testified.  *Id.* at 34-65, 78-80.[4]  In her July 2011 hearing decision, the ALJ found

---

[3]      Unless otherwise indicated, quotations in this report are reproduced verbatim.

[4]      Plaintiff waived her right to representation at the hearing.  AR 36-39.  In her opening brief on judicial review – where she is represented by attorney Miles Mitzner – she acknowledges she was unrepresented at the
(continued...)

Plaintiff retained the ability to perform her past relevant work as a data entry clerk and, accordingly, was not disabled within the meaning of the Social Security Act. *Id.* at 17-28. The SSA Appeals Council declined Plaintiff's request for review of the ALJ's decision, *id.* at 1-5, and she then sought this Court's judicial review of what is now the Commissioner's final decision. Doc. 1.

## II.   Determination of disability.

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner applies a five-step inquiry to determine whether a claimant is disabled. *See* 20 C.F.R. § 416.920(b)-(f); *see also Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (describing five steps in detail). Under this sequential procedure, Plaintiff bears the initial burden of proving she has one or more severe impairments. 20 C.F.R. § 416.912; *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). Then, if Plaintiff makes a prima facie showing that she can no longer engage in prior work activity, the

---

[4](...continued)
hearing but does not assert any error in that regard. Doc. 14, at 1. Accordingly, Plaintiff has waived any error implicated by her status at the administrative hearing.

burden of proof shifts to the Commissioner to show Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy. *Turner*, 754 F.2d at 328; *Channel v. Heckler,* 747 F.2d 577, 579 (10th Cir. 1984).

## III. Analysis.

### A. Standard of review.

This court is limited in its review of the Commissioner's final decision to a determination of whether the ALJ's "factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue,* 602 F.3d 1136, 1140 (10th Cir. 2010). Nonetheless, while this court can neither reweigh the evidence nor substitute its own judgment for that of the ALJ, the court's review is not superficial. "To find that the [Commissioner's] decision is supported by substantial evidence, there must be sufficient relevant evidence in the record that a reasonable person might deem adequate to support the ultimate conclusion." *Bernal v. Bowen,* 851 F.2d 297, 299 (10th Cir. 1988). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id*.

B.      Plaintiff's claims of error.

1.      Whether – in light of Dictionary of Occupational Titles (DOT)[5] criteria requiring frequent handling by a data entry clerk – the ALJ erred at step four in finding Plaintiff, with her limitation, at times, to occasional handling with her dominant arm, could perform her past relevant work as a data entry clerk.

a.      The scope of Plaintiff's first claim of error.

(I)      Plaintiff's opening brief.

In sharp contrast to the undersigned's description of the first of two claims of error on judicial review, Plaintiff – in her *opening* brief – labels her claim in this manner: "The ALJ committed reversible error by improperly determining Residual Functional Capacity (RFC)."[6]  Doc. 14, at 4.  She then maintains "[t]here is no support for the RFC assessment by the ALJ and her resultant decision at step four" where the ALJ determined Plaintiff "could return to her past work as a data entry clerk."  *Id.*

According to Plaintiff, "[t]he ALJ's RFC was a sedentary one with only *occasional* handling with the dominant arm.  (TR 24)[.]"  *Id.*  Nonetheless,

_____

[5]      The Dictionary of Occupational Titles, published by the Department of Labor, is one of several publications from which the Social Security Administration "will take administrative notice of reliable job information."  20 C.F.R. § 416.966(d)(1).

[6]      Residual functional capacity (RFC) "is the most [a claimant] can still do despite [a claimant's] limitations."  20 C.F.R. § 416.945(a)(1).

despite labeling her claim as a challenge to that RFC determination, Plaintiff does *not* dispute it. *Id.* at 4-6. Instead, in her opening brief, Plaintiff accepts the RFC assessment for purposes of her claim that the ALJ committed reversible error by allegedly disregarding DOT criteria in finding Plaintiff could return to her past work as a data entry clerk. *Id.*

### (ii) The Commissioner's response brief.

In responding to this initial claim of error, the Commissioner points first to Plaintiff's failure to make anything more than an unsupported, titular claim that the ALJ's RFC assessment was erroneous, noting Plaintiff failed either to identify those limitations she believed should have been included in the RFC or to establish their evidentiary support. Doc. 15, at 4-5. Due to Plaintiff's failure to develop this argument, the Commissioner submits it has now been waived. *Id.* at 5. As to the merits of the claim Plaintiff *did* raise through her opening brief, the Commissioner argues the record substantially supports the ALJ's determination at step four that Plaintiff could perform the work of a data entry clerk despite her limitation, at times, to occasional handling with her dominant arm. *Id.* at 5-7.

### (iii) Plaintiff's reply brief.

Through her reply brief, Plaintiff attempts to impermissibly expand the scope of her first claim of error. Doc. 18. Initially, she confines her argument to

6

the scope of her opening brief, maintaining the Commissioner has simply failed to comprehend the fact that her claim "is *not* that 'additional limitations' should have been considered by the ALJ." *Id.* at 2 (emphasis added). Plaintiff instead insists her claim "is that the limitations [the ALJ] used in her RFC were disregarded in her step four finding." *Id.* Nonetheless, despite that insistence, Plaintiff then immediately shifts her argument to an entirely new issue: the ALJ's alleged failure to properly consider certain treating physician opinions. *Id.* at 2-6.

In raising this new issue, Plaintiff initially admits "[t]he ALJ properly considered the treating physicians limitations . . . ." *Id.* at 2. But, in concluding that *very* sentence, she argues the ALJ "minimized" those limitations. *Id.* Plaintiff then invites the court – for the first time – to consider "specific evidence to build a logical bridge to the step four decisions errors." *Id.* Ultimately, she concludes, "So, even though the ALJ said she adopted the treater's opinions, she really didn't. They felt she could not do her past work." *Id.* at 6. In sum, having admitted the ALJ gave proper consideration to any limitation imposed by a treating physician, Plaintiff then promptly contradicts that admission in an attempt to inject a new claim of error regarding the ALJ's consideration of various treating physicians' opinions – a claim demonstrably absent from her

opening brief. *See* Doc. 14, at 4-6.[7]

Next, Plaintiff maintains – again, for the first time on judicial review – the

ALJ erred by "fail[ing] to develop the record" on the demands of Plaintiff's past

relevant work and by failing "to make the required findings" concerning that

past relevant work. Doc. 18, at 7. Finally, in this same vein and, once more, for

the first time, Plaintiff claims the "[t]he ALJ erroneously delegated her fact-

finding responsibilities to the VE." *Id.* at 9.

### b. Applicable law.

In order to attain judicial review of an issue implicated by a final decision

of the Commissioner, it is not enough to simply raise that issue. *See Murrell v.*

*Shalala*, 43 F.3d 1388, 1389 n.2 (10th Cir. 1994) ( "[P]erfunctory complaints fail

to frame and develop an issue sufficient for judicial review."). This Court is

unable to address contentions for which a claimant fails to develop the factual

and legal bases for her arguments. *See Threet v. Barnhart*, 353 F.3d 1185, 1190

(10th Cir. 2003) (declining to speculate on claimant's behalf when argument on

an issue is "insufficiently developed"). Likewise, this Court declines to consider

---

[7]    The undersigned is aware Plaintiff referred to the opinions of Drs.
Ruffin and Blough in her opening brief's statement of facts. Doc. 14, at 3.
Nonetheless, Plaintiff accepted the ALJ's RFC for purposes of her first claim of
error, *id.* at 4-6, never once using the word "physician" or the word "treating" in
that argument. *Id.*

issues Plaintiff raises for the first time in her reply brief. *See Montoya v. Apfel,*

No. 99-2156, 2000 WL 556582, at *1 n.3 (10th Cir. May 8, 2000) (unpublished

op.) (recognizing district court's refusal to consider an issue raised for the first

time in a reply brief and holding the issue waived "because the issue was not

before the district court").

Accordingly, the *only* issue that this Court considers under the ambit of

Plaintiff's first claim of error is whether – in light of DOT criteria requiring

frequent handling by a data entry clerk – the ALJ erred at step four in finding

Plaintiff, with her limitation, at times, to occasional handling with her dominant

arm, could perform her past relevant work as a data entry clerk.

### c.      The ALJ's claim-specific findings.

The ALJ found in her RFC assessment that, at times, Plaintiff would be

limited to occasional handling with her dominant arm.  AR 24.  A vocational

expert testified at the administrative hearing that Plaintiff's employment

history included work as a data entry secretary and a telemarketer.  *Id* at 61.

The ALJ asked the vocational expert whether an individual with Plaintiff's RFC

for handling could perform any of Plaintiff's past work.  *Id.*  The vocational

expert testified such an individual could perform certain past work, including

work as a data entry secretary and as a telemarketer.[8]  *Id.*  The ALJ then asked

the vocational expert whether she had  "described these jobs differently from the

Dictionary of Occupational Titles[.]"  *Id.* at 62.  The vocational expert responded

that she had not, explaining the jobs "require frequent handling."   *Id.*

Nonetheless, the expert went on to testify that, despite this requirement, an

individual with Plaintiff's RFC could return to work as a data entry secretary

and a telemarketer because "the non-dominant hand can do some of that activity

. . . ."  *Id.*

The ALJ ultimately found Plaintiff capable of performing her past

relevant work as a data entry clerk and, thus, not disabled.  *Id.* at 27-28.  In so

finding, the ALJ expressly relied on the vocational expert's opinion that, while

this work includes frequent handling, it is varied enough to allow Plaintiff to use

her non-dominant arm during those times when she would be limited to

occasional handling.  *Id.* at 28.

### d.    Plaintiff has failed to establish her claim of error at step four.

Plaintiff's step four claim hinges on the premise that work as a data entry

clerk "presumptively requires the use of *both* hands to perform keyboarding, not

just one hand."  Doc. 14, at 5.  She argues this is consistent with information in

---

[8]      The ALJ ultimately determined Plaintiff's work as a telemarketer had not likely been performed at the level of substantial gainful activity.  AR 28.

the DOT and that the ALJ's "revisionist" approach to this DOT information resulted in an unsupported step four finding. *Id.* at 5-6. So, she contends the ALJ committed reversible error.

As the Commissioner points out, however, the expert vocational witness agreed with the ALJ that "computer keyboarding is generally fingering not handling." Doc. 15, at 6; AR 63. "Handling," in contrast, is defined by the SSA as "seizing, holding, grasping, turning or otherwise working primarily with the whole hand or hands . . . ." Social Security Ruling 85-15, 1985 WL 56857, at *7.

In response,[9] Plaintiff continues to blur these functions, asking the court, for example, to picture hands moving on a keyboard. Doc. 18, at 3. She faults the Commissioner for "tr[ying] to reposition this Court to only look at handling . . . ." *Id.* at 4. And, despite expert testimony to the contrary, Plaintiff states – with no support – that "[u]se of the fingers is use of the hands." *Id.* at 5.

The ALJ's RFC, however, imposes a limitation on Plaintiff's handling – not her fingering. AR 24. It limits Plaintiff, at times, to occasional handling with her non-dominant arm. *Id.* Plaintiff makes no supported challenge to that RFC. Rather, she accepts it for the purpose of claiming the ALJ's determination

---

[9]        Notwithstanding Plaintiff's waiver of her opportunity to contest the ALJ's RFC assessment on the grounds that it should have included different or additional limitations, the undersigned has considered those portions of the reply brief that are arguably responsive to the narrow step four issue raised in her opening brief.

at step four – that Plaintiff retained the ability to return to her past relevant work as a data entry clerk – lacked evidentiary support in that the DOT requires frequent handling in that work. Doc. 14, at 4.

Contrary to Plaintiff's premise, an "ALJ may rely on information supplied by the [vocational expert] at step four." *Doyal v. Barnhart*, 331 F.3d 758, 761 (10th Cir. 2003). Here, the vocational expert acknowledged, consistent with the DOT, that the work of a data entry clerk requires frequent handling, but she then went on to give her expert opinion that Plaintiff's limitation to occasional handling would not prevent her from performing her past relevant data entry work.

Plaintiff challenges that testimony on two grounds – it "was premised upon false logic and was anything but expert." Doc. 14, at 5. Plaintiff's claim of "false logic," however, turns on her premise that handling and keyboarding are synonymous, *id.*, and, as the Commissioner notes, Plaintiff has not objected to the vocational expert's qualifications. Doc. 15, at 6. Similarly, as to the validity of the ALJ's finding in reliance on the expert's testimony, AR 28, Plaintiff, after repeating the ALJ's language, states only that "[t]his ALJ is playing VE or at least playing with her testimony." Doc. 14, at 5. As before, the court is "unable to address [that] contention . . . because [Plaintiff's] argument is insufficiently developed . . . ." *See Threet*, 353 F.3d at 1190.

12

Plaintiff's claim of error at step four is unavailing.

### 2. Whether the ALJ properly considered the impact of Plaintiff's impairments in combination.

Here, Plaintiff submits "[t]he ALJ erred by separately evaluating the consequence of [Plaintiff's] mental and physical impairments and by not considering their *combined* effects." Doc. 14, at 7. She argues "[t]he law of this Circuit requires consideration of the *combined* effect of impairments" but then fails to support her claim of error with any controlling Tenth Circuit law.[10] *Id.* In fact, in citing "[t]he well settled rule in *this* Circuit" she quotes and cites only another circuit's case law, as she does through the majority of this section. Doc. 14, at 6-7 (emphasis added).

In addition, Plaintiff fails to direct the court to those impairments the ALJ purportedly failed to consider in combination. The undersigned's review of the decision shows the ALJ acknowledged her responsibility in assessing Plaintiff's RFC to consider all impairments, both severe and not severe. AR 19. She found a "severe" combination of impairments at step two, *id.* at 20, but, at step three, determined Plaintiff did not have an impairment – "or a combination of impairments" – meeting or equaling a listed impairment. *Id.* at 23. In

___

[10]     The undersigned recognizes the Tenth Circuit caselaw requires the ALJ "to consider all of the claimant's medically determinable impairments, singly and in combination." *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2001).

explicating her RFC assessment, the ALJ noted Plaintiff's claim of disability resulting from a combination of impairments. *Id.* at 25. Her RFC findings then reflect her collective consideration of Plaintiff's impairments and their functional impact. For example, the ALJ considered functional limitations from Plaintiff's autoimmune disorders "in conjunction with her musculoskeletal limits," *id.* at 26, and found that physiological stressors which could aggravate a transient ischemic attack were accommodated by the already reduced RFC. *Id.* Likewise, the ALJ gave specific consideration to Plaintiff's non-severe mental impairments, finding they did not cause any additional work-related limitations in Plaintiff's RFC. *Id.* at 24.

In sum, the ALJ incontrovertibly considered Plaintiff's impairments in combination. *See Gibbons v. Barnhart*, 85 F. App'x 88, 90-91 (10th Cir. 2003) (upholding decision where conclusions reached by ALJ in assessing RFC demonstrate consideration of impairments in combination). Plaintiff argues only in unsupported generalities – both legally and factually – and has failed to demonstrate error by the ALJ.

## IV. Recommendation and notice of right to object.

For the reasons stated, the undersigned Magistrate Judge recommends the Commissioner's decision be affirmed.

The parties are advised of their right to object to this Report and Recommendation by November 8, 2013, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The parties are further advised that failure to make timely objection to this Report and Recommendation waives their right to appellate review of both factual and legal issues contained herein. *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the Magistrate Judge in this matter.

ENTERED this 18th day of October, 2013.

SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE